MILLIKEN (GOODENOW v.). See Case No. 5,535.

## Case No. 9,609.

### The MILLINOCKET.

BETHEL et al. v. The MILLINOCKET.

[4 Adm. Rec. 83.]

District Court, S. D. Florida.   Dec. 24, 1848.

SALVAGE—UNMANAGEABLE VESSEL—TOWAGE—HANGING RUDDER.

[Towing an unmanageable vessel into smooth water and there hanging her rudder, thus making it possible to navigate her, is salvage service.]

[This was a libel by Joseph Bethel and others against the brig Millinocket for salvage services rendered by the sloop America.]

S. R. Mallory, for libelants.
Wm. R. Hackley, for respondent.

MARVIN, District Judge. It appears from the libel, answer and proof in this case that the brig Millinocket, Harper, master, while on a voyage from Havana to New York, on the morning of the 11th inst. struck upon that part of the Florida Reef known as the "American Shoal," distant about 18 miles from this port, where she remained about two hours. During the time she thumped off her rudder and her false keel, wore off a considerable portion of her keel, started her stempost and forefoot, and chafed some of her plank nearly through, and she began to leak considerably. She then came off the reef and was anchored by the master. She parted her chain and the captain let go another anchor, which held her until the arrival of the libellant Bethel in the sloop America, she having discovered the brig ashore early in the morning with her ensign flying at that time union down, made sail for her, and on his arrival offered his assistance to Captain Harper. Before the arrival of Captain Bethel, Captain Harper had made several efforts to hang his rudder, but the sea was so rough that he found it impossible to do so. He employed Bethel in the first instance to pilot him into Key West, and six of his men to aid at the pumps. The brig was got under way and the attempt made to steer and navigate her by means of her sails, but it was found upon the experiments being made that the brig would neither stay nor wear and was unmanageable, owing, as the master supposed, to the injury she had sustained in her keel and forefoot. The master says that it was impossible for

him to have hung the rudder either where the brig lay when she first came off the reef or anywhere in the Gulf, into which she was driven on account of the sea. The wind too blew fresh from the north, driving the brig further out into the Gulf Stream towards the Cuba shore. Finding that he could neither hang the brig's rudder nor navigate her without, he engaged Bethel to place his sloop ahead and to tow him into Key West, or inside the reef. This Bethel did. He towed the brig inside the reef into smooth water, anchored her, and sent down divers, who succeeded in hanging the rudder, after which she was navigated into this port. Bethel now libels for salvage for himself, owners and crew. It is impossible to say that the services of Bethel and his crew do not far exceed in value and in real merit mere pilot service. The facts of the case render it by no means improbable that his services have been the means of saving the vessel and cargo from total loss. The master of the brig admits that he could neither have hung his rudder nor navigated his vessel without it while the sea and wind remained as rough and strong as they were during that time, and it is in evidence that the wind continued from that time to blow equally fresh from the north for more than a week. No other means of bringing the brig into a safe port, under the circumstances, have been suggested to the court, and none other than the means adopted now occur to my mind—that of towing her in by the sloop America. If these facts be so, and there is no reason to doubt them, the brig and cargo were in real peril of total loss, and the services of Bethel have been the means of saving them. In regard to the amount of salvage that ought to be allowed little need be said. I have so often discussed such questions from this place, and the great leading principles and motives which govern me in fixing the amounts of salvage in different cases that come before this court are so well understood by the wreckers and others interested on this coast, that I do not deem it necessary at this time to say anything upon this point. The brig and cargo have been appraised at $21,233.80, including duties. These have not been accurately ascertained, nor is it necessary that they should be, for all the purposes of this decision. I think it may fairly be considered that the brig and cargo are worth, exclusive of duties, $15,000. Fifteen per cent. of this sum, or $2,250, I think is a reasonable salvage to be allowed the salvors. This sum, when divided among the salvors, will not make the share of each unreasonably large.

It is ordered, adjudged and decreed that the libellants have, recover and receive in full compensation for their services rendered the brig Millinocket and cargo, as alleged by them in their libel, the sum of twenty-two hundred and fifty dollars and their costs of suit, and that upon the payment thereof to the marshal he restore said brig and cargo to the master thereof, for and on account of whom it may concern.